ENTERPRISE FENCE AND FOUNDRY COMPANY *v.* MAJORS.

[No. 10,286. Filed November 26, 1918.]

1. MASTER AND SERVANT.—*Workmen's Compensation.—Refusal to Submit to Operation.—Right to Compensation.*—An injured employe seeking compensation under a workmen's compensation act must submit to an operation which will cure him when so advised by his attending physician, when not attended with danger to life or health or extraordinary suffering, and he cannot recover compensation for permanent impairment resulting from a refusal to submit to such an operation. p. 577.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Refusal to Submit to Operation.—Right to Compensation.*—In a proceeding for compensation under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, for injury to a hand, applicant's refusal to permit the amputation of a finger was not such unreasonable or wilful misconduct as would prejudice the allowance of additional compensation, for permanent impairment of the hand, where the attending physician advised that the finger might be saved. p. 578.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Agreement as to Compensation.—Modification.—Power of Industrial Board.*—Although the employer and an injured servant entered into an agreement as to compensation for the loss of the employe's finger, as provided for by §57, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, and the agreement was filed with, and approved by, the Industrial Board, the award could be modified and increased upon a showing that the employe's use of the hand had become permanently impaired because of infection after the agreed award, where such award was intended to pay only for the loss of the finger. p. 579.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Edward Majors against the Enterprise Fence and Foundry Company. From an award for applicant, the defendant appeals. *Affirmed.*

*Orbison & Olive,* for appellant.
*W. L. Taylor,* for appellee.

Ibach, J.—Appellee was injured on March 6, 1917, while in the employ of appellant, which injury consisted of a "twist and laceration of the index finger of the right hand." Appellant had actual knowledge of the injury when it was received, made its report of the same at that time, and filed it with the Industrial Board on March 14, 1917. On March 30, the parties agreed on the compensation which should be paid to appellee, which was $6.81 a week during his total disability not to exceed 500 weeks, and the necessary and reasonable surgical, medical and hospital expenses occasioned by the injury during the first thirty days thereafter. This agreement was approved by the board on April 2, 1917. On April 19, appellee's injured finger was amputated at the middle joint. At that time the parties entered into a supplemental agreement pursuant to §57, Acts 1915 p. 392 (as amended, Acts 1917 p. 154), §80201 *et seq.* Burns' Supp. 1918, wherein appellant agreed to pay appellee for a period of fifteen weeks the sum of $6.81 each week, which was fifty-five per cent. of his average weekly wage. This agreement was likewise filed with the Industrial Board, and approved by it on April 26, 1917. Appellant has fully paid the compensation provided for in such supplemental agreement.

On September 10, 1917, appellee filed a petition with the Industrial Board, which he terms his "Application for Adjustment," and in which he asks for a review of the agreed award of April 19, 1917. The material averments of his petition are that, as a result of his injury, the second and ring fingers of his right hand were left stiff and permanently injured. This petition was subsequently heard by the full board, and an award made granting to appellee 22½ weeks' compensation at the rate of $6.81 per week, to be paid in cash in a lump sum. It is from this award that appellant appeals and contends: (1) That the Industrial Board had no legal power to make appellee an additional award after the agreement of April 19, 1917, which agreement was fully executed by the parties in settlement of his claim and in all respects in conformity with the rules of the board more than seven days after the accident and duly approved by the board, and that there was no change of condition so far as the extent of the injury was concerned subsequently to the execution of such agreement. (2) That appellee cannot recover compensation for a permanent injury to his hand, when said permanent injury was due to his refusal to permit the attending surgeon to perform a surgical operation not of itself dangerous or attended with extraordinary suffering, which, if it had been performed when it was advised, would have prevented infection and saved the permanent impairment now complained of.

We will first dispose of appellant's second contention. The law seems to be well settled that an injured employe seeking compensation must submit to

1. an operation which will cure him when so advised by his attending physician, when not

attended with danger to life or health or extraordinary suffering, and, if as a result of such refusal on his part he suffers a permanent impairment, the employer will not be required to compensate him for the resulting permanent impairment. 1 Honnold, Workmen's Compensation 525; *Jendrus* v. *Detroit Steel Products Co.* (1913), 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A 381, Ann. Cas. 1915D 476.

There is evidence in this case, and the Industrial Board found: ''That at the time of the injury the attending surgeon employed by appellant at first advised the amputation of appellee's index finger; that appellee remonstrated and insisted that the finger should be saved if possible and, in response to the objection of appellee, the attending physician advised that he had saved fingers as badly injured as that of appellee, and it was agreed to make an effort to save the finger. The finger was not amputated at that time, but was treated for some period in an endeavor to save it; that infection developed which involved practically the whole of plaintiff's right hand, and made necessary the amputation of the index finger which was amputated at the middle joint * * *. That the infection developed because of the delay in the amputation; that the plaintiff's refusal to accept the amputation at the time of the injury was made in good faith with a view of saving the finger if possible; that his refusal was not wilful, stubborn or without reason.'' It would therefore seem to follow that appellee's insistence that his finger be saved if possible, when taken with the statement made by the surgeon, was not such unreasonable or wilful misconduct as would prejudice the allowance of additional compensation.

We are satisfied that the further contention of appellee has been determined by this court. *In re Stone* (1917), 66 Ind. App. 38, 117 N. E. 669. In that case it is said that when the Industrial Board has approved an agreement under the Workmen's Compensation Act, it still has jurisdiction of the subject-matter, even if the agreement was intended as a compromise settlement of all compensation, and may consider all dispute with reference to compensation to be paid at any time before the case is finally disposed of.

In this connection the Industrial Board has found, in addition to what we have already set out: "That on the 19th day of April, 1917, plaintiff and defendant entered into a supplemental compensation agreement providing for the payment of fifteen weeks' compensation at the rate of $6.81 per week for the loss of the index finger of the right hand at the middle joint; that pursuant to said agreement the defendant had paid to plaintiff fifteen weeks' compensation at the rate of $6.81 per week; that because of the amputation of the index finger at the middle joint, the adhesion of tendons, and the permanent stiffness especially in the middle and second fingers of the right hand, the natural use and function of the whole said hand has been permanently impaired."

It is clear, we think, that by the supplemental agreement appellant intended to and did pay for the loss of appellee's index finger as provided for

3. by said §57, §80201 *et seq.* Burns, *supra.* Nothing was allowed or paid for permanent or temporary partial disability thereafter, if any resulted to appellee's hand and other fingers. The evidence shows and the finding is that appellee's second and ring

fingers were "left stiff" owing to an infection, consequently a partial permanent injury resulted to such fingers, and no such injury was contemplated or considered in the agreed award of April 19, 1917. Such award was doubtless considered sufficient for the injuries as they then existed, but a change in such condition and an increase in appellee's disability were properly considered by the Industrial Board upon the petition filed by appellee, and there is no dispute in this appeal that appellee's petition was timely and properly filed. Under all the evidence, we are satisfied that the Industrial Board was justified in reaching the conclusion that appellee's second and ring fingers had become in part permanently impaired after the agreed award, and it was warranted in granting the award which is here appealed from.

Award affirmed.

NOTE.—Reported in 121 N. E. 6. See under (1) L. R. A. 1916A 387, 1917D 174.